UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| VOGUE TOWER PARTNERS VII, LLC, | | |
| Plaintiff, | | |
| v. | | No. _____ |
| THE TOWN OF THOMPSON'S STATION, TENNESSEE, THE TOWN OF THOMPSON'S STATION BOARD OF ZONING APPEALS, and the TOWN OF THOMPSON'S STATION MUNICIPAL PLANNING COMMISSION, | | |
| Defendants. | | |

## COMPLAINT FOR EXPEDITED DECLARATORY AND INJUNCTIVE RELIEF

### Summary

Pursuant to 47 U.S.C. § 332 and other applicable law, Plaintiff Vogue Tower Partners VII, LLC ("Vogue") files this action against the Town of Thompson's Station, Tennessee, the Town of Thompson's Station Board of Zoning Appeals, and the Town of Thompson's Station Municipal Planning Commission (collectively, the "Town") for declaratory and injunctive relief. Vogue requests such relief on an expedited basis pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

This action arises out of the Town's unlawful denial of Vogue's application to construct and operate a telecommunications tower on property located at 4561 Columbia Pike in Thompson's Station. The primary purpose of the proposed tower is to provide the necessary facility that will remedy a significant cellular coverage gap in the surrounding area. At least one wireless carrier intends to utilize this proposed facility to improve its

4834-1566-3578_2

coverage, and the facility will be able to accommodate other carriers that also desire to improve their coverage in this area.

The Town denied Vogue's application because the Town misinterpreted its own ordinance. More specifically, Vogue's application proposed building the telecommunications tower on private land zoned "Community Commercial." Although the Town's ordinance expressly states that a wireless communications facility is "permitted by right" on land so zoned, the Town concluded that its ordinance does not permit wireless facilities on such land. The Town's misinterpretation of its own ordinance resulted in the effective denial of Vogue's application.

The Town's misinterpretation of its ordinance, and resulting denial of Vogue's application, violate federal law, specifically 47 U.S.C. § 332(c)(7) of the Telecommunications Act of 1996 (the "Telecom Act"), because the denial: (1) was not reduced to writing; (2) was not supported by substantial evidence contained in a written record; and (3) effectively prohibits wireless service in the vicinity of the proposed facility. The Town's denial also violates Tennessee law preventing exclusion of telecommunications facilities and because it was illegal, arbitrary, capricious, and not supported by material evidence.

Vogue therefore requests that this Court issue all appropriate relief on an expedited basis, including all declaratory relief necessary to clarify and adjudicate Vogue's rights under the Town's ordinance, the Telecom Act, and applicable Tennessee law. Vogue also requests, to the extent necessary, that the Court issue a permanent injunction requiring the Town to apply its ordinance to Vogue's application in a manner consistent with the declaratory relief sought herein.

## Parties

1.      Vogue Tower Partners VII, LLC is a Tennessee limited-liability company with its principal place of business located in Chattanooga, Tennessee.  Vogue, on behalf of itself and its affiliates, constructs, owns, and manages wireless telecommunications facilities that are used by telecommunications carriers to provide voice, data, internet, and other wireless services to consumers in Tennessee and throughout the country.

2.      The Town of Thompson's Station is a governmental body existing under Tennessee law and may be served with process through the Town's Attorney, Andrew Mills, Reynolds, Potter, Ragan and Vandivort, 210 E. College Street, Dickson, TN 37055 and/or its Mayor Corey Napier, 1550 Thompson's Station Road West, Thompson's Station, TN 37179.

3.      The Town of Thompson's Station Board of Zoning Appeals (the "BZA") is a governmental body existing under Tennessee law and may be served with process through its Chairman, Mary Herring, 1550 Thompson's Station Road West, Thompson's Station, TN 37179.

4.      The Town of Thompson's Station Municipal Planning Commission (the "Planning Commission") is a governmental body existing under Tennessee law and may be served with process through its Chairman, Trent Harris, 1550 Thompson's Station Road West, Thompson's Station, TN 37179.

## Jurisdiction And Venue

5.      This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this action involves federal questions arising under the Telecommunications Act of 1996 (the "Telecom Act"), specifically 47 U.S.C. § 332(c)(7).

4834-1566-3578_2

6. This Court has authority to issue declaratory relief pursuant to 28 U.S.C. § 2201(a).

7. This Court has supplemental jurisdiction over Vogue's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because the Defendants reside in this District; because a substantial part of property that is the subject of this action is situated in this District; and because a substantial part of the events or omissions giving rise to the action occurred in this District.

## Facts

### Federal Control and Supremacy Over Wireless Telecommunication Facility Siting

9. The Telecommunications Act of 1996 (the "Telecom Act") governs federal, state, and local governmental regulation of the siting of personal wireless service facilities such as the one at issue in this case.

10. The Telecom Act further provides that any person adversely affected by a state or local government's act, or failure to act, that is inconsistent with 47 U.S.C. § 332(c)(7) may seek review in federal court and that the court shall hear and decide the action on an expedited basis.

### The Wireless Communications Industry

11. Vogue, on behalf of itself and its affiliates, constructs, owns, and manages wireless communications facilities in Tennessee and elsewhere in the country. Vogue leases space on its facilities to regional and national wireless carriers who provide personal and

4834-1566-3578_2

advanced wireless services, as well as other telecommunications services, as those terms are defined under federal law, to end-user wireless consumers. In providing this valuable service to wireless carriers, Vogue is facilitating the development and deployment of advanced wireless and broadband connectivity consistent with the goals of the Telecom Act. Vogue also provides space on its facilities free of charge to federal, state, and local first responders, law enforcement, and public safety agencies.

12.     Federal law establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, nationwide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of national defense, [and] for the purpose of promoting safety of life and property through the use of wire and radio communication...." 47 U.S.C. §151.

13.     To advance this national policy, Vogue constructs towers and other wireless facilities that allow wireless carriers to create, maintain, and improve wireless telecommunications networks.

14.     To provide reliable service to a user, coverage from cell sites must overlap in a grid pattern resembling a honeycomb. If Vogue is unable to construct a cell site within a specific geographic area, the wireless carriers it serves will not be able to provide reliable service to the consumers within that area.

15.     To determine where a new wireless facility is required, radio-frequency engineers use various techniques, such as sophisticated computer programs and field testing, to complete a propagation study, which shows where cell sites need to be located in order to provide service. The propagation study also takes into account the topography of the land,

4834-1566-3578_2

the coverage boundaries of neighboring cell sites, and other factors. For a wireless network to perform as intended, cell sites must be located, constructed, and operated so that reliable service can be achieved. If there is no functioning cell site within a given area, there will be no reliable service for customers within that area, and customers who live in or travel through the area will experience an unacceptable level of dropped calls and call-connection failures.

### The Proposed Facility, Vogue's Application, And the Town's Misinterpretation of Its Ordinance

16. Based upon its research and knowledge, Vogue has determined that the area in and around 4156 Columbia Pike in Thompson's Station was an area experiencing inadequate wireless coverage.

17. That carrier has deemed this coverage gap to be significant, and the gap must be remedied for the carrier to provide effective service to the targeted area.

18. As explained below in more detail, Vogue intends to construct a facility at 4156 Columbia Pike with capacity to allow multiple carriers to improve their coverage gaps and to better serve their customers in this area. At least one wireless carrier has committed to occupying space on this proposed facility.

19. The Town has zoned 4156 Columbia Pike as "Community Commercial," and that property is currently owned by a private third party who has agreed to allow Vogue to construct the proposed facility there.

20. Vogue and the wireless carrier investigated properties within the surrounding area, referred to as the "search ring," that were suitable for a wireless telecommunications facility. Among other requirements, a suitable site must be sufficiently close to the coverage

gap, must be of a sufficient height and topography to provide adequate coverage within the gap, must be leasable, and must be buildable.

21. The investigation of potential sites in the search ring resulted in several findings, some of which were:

A. There were no existing telecommunications facilities within the search ring that had additional capacity or that were otherwise suitable to remedy the coverage gap.

B. In 2019, Vogue approached Thompson's Station Mayor, Corey Napier, about exploring the possibility of Vogue constructing a wireless facility on Town property. Napier was receptive and provided Vogue with a list of approximately twenty parcels of Town property for Vogue to consider. Napier directed Vogue to work with Kenneth McLawhon, the Town Administrator. In November 2019, Vogue contacted McLawhon and made several attempts to arrange planning meetings and site visits before the end of that calendar year. McLawhon responded that several professed conflicts would make meeting within that time difficult. He told Vogue he would respond back with available dates but never did so. Vogue followed up again with Mayor Napier in February 2020, again asking whether the Town would be interested in constructing a wireless facility on a specific parcel of land owned by the Town. The Town never responded.

C. Several properties within the search ring were properties owned and controlled by the Town. Because the Town declined to follow up with

4834-1566-3578_2

Vogue, Vogue was unable to explore whether any of those properties might be suitable candidates for the proposed facility.

D.     The search ring also included property owned and controlled by Mars Petcare, but that property was not a viable candidate. Upon information and belief, about a year or two before Vogue's request, Mars declined a similar request from another developer to build a wireless facility on Mars' property.

E.     Aside from the properties owned by Mars and the Town, the only other feasible site within the search ring was the privately owned parcel of land at 4156 Columbia Pike.

22.     Thus, after evaluating potential sites within the search ring, Vogue reasonably concluded that 4156 Columbia Pike was the only available property suitable for construction of a telecommunications facility that would remedy the gap in coverage. Vogue approached the owner about leasing space to build the proposed facility, and the owner agreed.

23.     Based on the above, Vogue demonstrated that it undertook a good-faith effort to identify available and feasible sites to construct a facility that could be used to remedy the coverage gap.

24.     Importantly, the investigation of potential sites within the search ring also sought to comply with the Town's Land-Development Ordinance (the "LDO" or "Ordinance").[1] Among other things, the Ordinance expressly states that construction of wireless facilities is "permitted by right" on property that is zoned Community Commercial

---

[1] The Ordinance can be found at https://www.thompsons-station.com/DocumentCenter/View/496/Land-Development-Ordinance-LDO (last accessed February 4th, 2021).

("CC"). 4156 Columbia Pike has been zoned Community Commercial at all times relevant to this action. Table 4.4 of the Ordinance says (emphasis added):

| TABLE 4.4   O2, G1, G2 USE ZONES LAND USE | | | | | | | |
|---|---|---|---|---|---|---|---|
| USE | D1 | D2 | D3 | NC | CC | IL | IM |
| Kiosk | | | | | P | | |
| Large format retail, over 50,000 sq. ft. | | | | | P | P | |
| Live-work unit | | | | | | | |
| Medical clinic | | | | P | P | P | P |

*    *    *    *

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Utility substation | P | P | P | P | P | P | P |
| Sports stadium | | | | | P | P | P |
| Wireless communications facility | | | | | P | P | P |
| AGRICULTURE | | | | | | | |
| Beekeeping | P | P | | | | | |

KEY: "P" = Permitted by Right; "S" = Special Exception (BZA Approval required); " " = Prohibited

25. On August 6, 2020, Vogue contacted Micah Wood, Thompson's Station Interim Town Planner, to confirm the process for pursuing approval to construct the wireless facility at 4156 Columbia Pike.

26. The next day, Wood informed Vogue that there was an alleged "conflict" in the Ordinance regarding where the Ordinance permitted construction of wireless facilities.

27. Wood referenced Section 4.11.7(b) of the Ordinance, which states:

4.11.7 Wireless Communications Facilities

These standards govern the development of wireless communications facilities.

a. […]

b. Permitted Locations. [Wireless Communication Towers] are permitted within the IM zoning district subject to these standards; however, the placement of such towers in areas and specific locations to minimize the visual impact of WCTs is strongly encouraged.

28.     Wood recommended to Vogue that "we can take the question to the Board of Zoning Appeals to provide an affirmation that the Permitted Use Table is the controlling standard."  Wood advised that in order to bring the issue before the Board of Zoning Appeals ("BZA"), Vogue would first need to file an application requesting approval for the proposed facility.

29.     On August 18, Vogue emailed Wood for more details about what Vogue needed to submit in order for the BZA to clarify that the Ordinance permits construction of wireless facilities on land zoned Community Commercial.  On August 19, Wood responded, saying that it wasn't necessary to submit a full site plan:

> We will need you to fill out a General Application for each request- One for the BZA request & one for the Site Plan. We will also need the fees for both requests $100 for BZA & for the Site Plan its $5.00 per acre plus $50. In order to have the pending application, we need the site plan application & fee. However, there is no need to submit your full site plan at this point. We can use the schematic design for the BZA request at this time.

30.     On October 9, as instructed, Vogue submitted its preliminary site plan to the Town.

31.     On October 12, Wood emailed Vogue with further instructions about how to bring the alleged conflict before the BZA, and he again instructed Vogue to hold off on submitting its full site plan.  The email says in relevant part:

> I've looked through the request & I will need an update to the BZA application, just to make the request to them as clear as possible. Please include a letter addressed to the BZA that specifically requests Administrative Review of a conflict between regulations in Table 4.4 Wireless Communications Facility Permitted Use Table & Section 4.11.7(b) Wireless Communications Facility Permitted Locations. This is the request that will resolve the conflict between the sections of the ordinance as to if this is a permitted use at the proposed location, which is zoned CC. If you could

attach it to the BZA request I've cut from the larger submittal & return it, we'll work on getting that set for an agenda.

[…]

On the site plan- I think we'll ask you to hold up on the official submittal of that for now. We are currently in the process of rolling out a new on-line portal for Planning Commission submittals & payment. So hold off on paying for the PC request at this point. When/if the BZA grants your request, we will have you submit through the on-line portal & pay all those associated fees.

32.     On October 13, as instructed, Vogue submitted its request that the BZA

resolve the alleged conflict.  A hearing was scheduled for November 4, 2020.

33.     On October 14, Vogue's counsel contacted Wood about the hearing.  Despite

Wood's previous statements, he advised Vogue's counsel that the Planning Commission's

Staff was likely to recommend that the BZA find that the Ordinance prohibits wireless

facilities everywhere except land zoned "Medium Industrial."

34.     On October 28, Vogue received the Staff Report from the Town's Planning

Commission.  As Wood indicated, the Staff Report took the position that wireless facilities

were permitted only in land zoned Medium Industrial:

In the review by Staff, the Use Condition in Section 4.11.6[2] is both more specific and detailed in narrowing the permitted location for Wireless Communications Facilities to the Medium Industrial (IM) zone. Therefore, this standard seems to be the overriding and more correct expression of the intent of the BOMA in the permitted locations for Wireless Communications Facilities. Staff recommends that the BZA find that Section 4.11.6, which permits Wireless Communications Facilities only within the Medium Industrial (IM) zone, is the appropriate standard for the permitted location of Wireless Communications Facilities within the Town. Along with this determination, Staff requests direction to draft an amendment to the LDO to revise the Table 4.4 Permitted Uses to limit Wireless Communications Facilities to the Medium Industrial (IM) zone.

_____

[2] The Staff Report mistakenly refers to the cited provision as Section 4.11.6.  The correct citation is Section 4.11.7.

35.     On November 4, the BZA held a hearing and dismissed Vogue's request for review of the Ordinance that the Town's Staff had directed Vogue to submit.  The BZA directed Wood to issue a written determination of the Staff's opinion about where wireless facilities were permitted under the Ordinance.

36.     On November 9, Wood, on behalf of the Planning Commission, issued the written opinion that under the Ordinance, wireless facilities were permitted only in land zoned Medium Industrial.  The letter also said that Vogue's application would not be reviewed by the Town and its Planning Commission.

37.     On December 8, Vogue filed an appeal for the BZA to rule on the merits of Vogue's request that the BZA confirm that the Ordinance permits the construction of wireless facilities on land zoned Community Commercial.  In other words, Vogue requested that the BZA decline to follow the Planning Commission's advisory opinion.  A hearing was set for January 6, 2021.

38.     On January 6, 2021, the BZA conducted the scheduled hearing.[3]  Vogue and its counsel appeared.  Among other things, Vogue's counsel explained that there really was no conflict within the Ordinance.  Section 4.11.7 does not say that wireless facilities are permitted only in land zoned Medium Industrial, nor does that section prohibit such facilities in land zoned Community Commercial.  The Town's interpretation of this provision was incorrect because it infers non-existent limitations that contradict the express language of Table 4.4 (*supra* at ¶ 24).

---

[3] A recording of the BZA's January 6, 2021 meeting is available at
https://www.youtube.com/watch?v=j0D84GVQBtc&feature=youtu.be (last accessed February 4, 2021).

4834-1566-3578_2

39.     Vogue's counsel also requested that the BZA consider Section 1.1.6(b) of the Ordinance, which the Staff's advisory opinion did not address.  Section 1.1.6(b) says:

> 1.1.6  Construction.  The following general rules of construction shall apply to regulations governing the [Ordinance]:
>
>> a.   […]
>>
>> b.   The diagrams and illustrations within this ordinance, unless specifically noted as advisory, are considered regulatory in nature and are legally binding.

40.     Thus, Table 4.4, which says that wireless communication towers are permitted on land zoned Community Commercial, is "legally binding" and cannot be ignored.

41.     Despite Vogue's request that the BZA confirm that the Ordinance allows wireless facilities to be constructed in land zoned Community Commercial, the BZA opted to follow the Staff's advisory opinion.  The BZA voted in favor of a motion that it called a "motion to uphold the Staff recommendation."  The BZA did not make any findings of fact in support of that motion, nor did the BZA address the merits of Vogue's pending application.

42.     Although the BZA did not formally deny Vogue's application at its January 6, 2021 meeting, its decision that wireless facilities are not allowed in land zoned Community Commercial constitutes an effective denial of Vogue's application.  Additionally, the BZA's decision to "uphold" the Staff's recommendation has that same effect.  The Planning Commission Staff recommended that Vogue's application not be submitted to the Planning Commission for review.

43.     Furthermore, neither the Staff nor the BZA acknowledged that limiting wireless facilities only to land zoned Medium Industrial has the effect of prohibiting

4834-1566-3578_2

placement of a wireless tower within the search ring. Based on Vogue's investigation, there are no sites within the search ring zoned Medium Industrial that are suitable locations for a wireless facility that will remedy the existing coverage gap. Thus, the Town's interpretation of its Ordinance means there is no realistic, feasible solution to resolve the coverage gap that Vogue's proposed wireless facility is designed to remedy.

## Count 1 – Failure To Provide Reasons For Denial In Writing

### 47 U.S.C. § 332(c)(7)(B)(iii)

44. Vogue incorporates by reference the preceding paragraphs of this Complaint.

45. Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

46. The United States Supreme Court has held that to comply with Section 332(c)(7)(B)(iii), the Town must state its reasons for denying the request "with sufficient clarity" to enable effective judicial review and must issue that writing "essentially contemporaneously" with the denial. *T-Mobile South, LLC v. Town of Roswell*, 135 S. Ct. 808, 818 (2015).

47. Based on its misinterpretation of the Ordinance on January 6, 2021, the Town effectively denied Vogue's application.

48. Since January 6, the Town has not provided Vogue with any writing that complies with Section 332(c)(7)(B)(iii).

49.     Consequently, the Town's denial violates, and should be preempted by, Section 332(c)(7)(B)(iii) and should be set aside by the Court.


## Count 2 – Failure To Support Denial With Substantial Evidence

## 47 U.S.C. § 332(c)(7)(B)(iii)

50.     Vogue incorporates by reference the preceding paragraphs of this Complaint.

51.     Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

52.     The Town's effective denial of Vogue's application on January 6, 2021 was not supported by substantial evidence in the written record.

53.     Consequently, the Town's denial violates, and should be preempted by, Section 332(c)(7)(B)(iii) and should be set aside by the Court.


## Count 3 – Prohibition of the Provision of Personal Wireless Services

## 47 U.S.C. § 332(c)(7)(B)(i)

54.     Vogue incorporates by reference the preceding paragraphs of this Complaint.

55.     Section 332(c)(7)(B)(i)(II) provides that state and local regulation of personal wireless service facilities "shall not prohibit or have the effect of prohibiting the provision of personal wireless services."

56.     There is a significant gap in coverage in the vicinity of the proposed facility.

57.     Vogue made a good-faith effort to explore and to review locations other than 4156 Columbia Pike that might serve as suitable sites to remedy the coverage gap. Despite those efforts, 4156 Columbia Pike is the only suitable site within the search ring that can remedy the coverage gap.

58.     The Town's interpretation of its Ordinance is incorrect and improperly prohibits the construction of wireless facilities anywhere within the search ring. The Town also previously failed to respond to Vogue's efforts to explore constructing a wireless facility on municipally owned land. These actions, along with others described herein, constitute undue and unreasonable restrictions that have the effect of prohibiting the provision of personal wireless services in violation of Section 332(c)(7)(B)(i)(II).

59.     The Town's denial of Vogue's application has the effect of prohibiting the provision of personal wireless services in violation of Section 332(c)(7)(B)(i)(II).

60.     Consequently, the Town's misinterpretation of its Ordinance, and resulting denial of Vogue's application, violate and are preempted by Section 332(c)(7)(B)(i)(II) and should be set aside on that basis.

**Count 4 – Declaratory Judgment**

**28 U.S.C. § 2201(a)**

61.     Vogue incorporates by reference the preceding paragraphs of this Complaint.

62.     The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), states that "[i]n a case of actual controversy within its jurisdiction," the Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

63.     As explained above, there exists an actual, present, and justiciable controversy between Vogue and the Town regarding the proper interpretation of the Ordinance.

64.     More specifically, Vogue maintains that the plain language of the Ordinance permits by right the construction of a wireless communication facility on land zoned "Community Commercial."  On the other hand, the Town ruled that the Ordinance only permits such construction on land zoned "Medium Industrial."

65.     Alternatively, to the extent the Ordinance is ambiguous or otherwise contains a genuine internal conflict, that ambiguity or conflict should be construed in Vogue's favor.

66.     Vogue seeks a declaratory judgment from this Court that the Ordinance permits by right the construction of a wireless communications facility on land zoned Community Commercial.


## Count 5 – Exclusion Of Location

## Tenn. Code Ann. § 13-24-301 *et seq*.

67.     Vogue incorporates by reference the preceding paragraphs of this Complaint.

68.     Tenn. Code Ann. § 13-24-301 states that "no municipal, county or regional planning commission or any municipal or Town legislative body shall, by ordinance or otherwise, exclude the location or relocation of any facility used to provide telephone or telegraph services to the public."

69.     The Town's Ordinance governing construction of new cell towers, as misinterpreted by the Town, is unduly burdensome and restrictive to the point that it

4834-1566-3578_2

constitutes an exclusion of new telecommunications facilities within the search ring and elsewhere.

70.     The Town's denial of Vogue's application constitutes an exclusion of the location of a proposed telecommunications tower that would be used to provide telephone services to the public, and the wrongful denial otherwise constitutes action in excess of the Town's jurisdiction as granted to it by Tennessee law.

71.     Consequently, the Town's denial of Vogue's application violates Tenn. Code Ann. § 13-24-301 *et seq*. and should be set aside on that basis.

## Count 6 – Arbitrary, Capricious, and Illegal Action

72.     Vogue incorporates by reference the preceding paragraphs of this Complaint.

73.     The Ordinance provides the requirements for approving an application to construct a telecommunications facility within the Town.  Among other things, these requirements include a list of land-zoning designations in which the construction of wireless facilities is permitted.  According to the Ordinance, such facilities are permitted by right in land zoned Community Commercial.

74.     The Town's denial of Vogue's application was arbitrary and capricious as evidenced by the following non-exclusive examples:

A.      The Town, without any reason or explanation, failed to respond to Vogue's requests to explore siting the wireless facility on municipally owned land;

B.      The Town, without any factual or legal basis, misinterpreted the plain language of its own Ordinance when it held that wireless facilities are prohibited anywhere except land zoned Medium Industrial;

C.     The Town's misinterpretation of its Ordinance violates the Telecom Act and
       Tennessee law because it has the effect of prohibiting or otherwise
       unreasonably restricting the deployment and provision of wireless
       telecommunications facilities in the search ring, as well as the Town more
       broadly; and

D.     The Town's effective denial of Vogue's application was not based on any
       legitimate factual or legal basis.

75.     As such, the Town's misinterpretation of its Ordinance and effective denial of
Vogue's application were arbitrary, capricious, illegal, and in excess of its lawful
jurisdiction.  The Court should therefore declare those actions null and void and order that
they be set aside.

## Count 7 – Injunctive Relief

76.     Vogue incorporates by reference the preceding paragraphs of this Complaint.

77.     As explained above, the Town's misinterpretation of the Ordinance, and its
resulting denial of Vogue's application based on that misinterpretation, has violated Vogue's
rights under the Telecom Act and applicable Tennessee law.

78.     The Town's actions have harmed Vogue and will continue to harm Vogue
unless corrected.

79.     In addition to the declaratory and other relief sought herein, Vogue requests
that the Court award all injunctive relief necessary to effectuate and implement the
declaratory and other relief sought herein.  Such injunctive relief includes, but is not
necessarily limited to, the following:

4834-1566-3578_2

A.     order that the Town's interpretation of the Ordinance, and its resulting denial of Vogue's application, be set aside and declared void;

B.     order the Town to properly interpret and apply the Ordinance to Vogue's application as described herein; and

C.     order the Town: (i) to reinstate Vogue's application; (ii) to permit Vogue a reasonable opportunity to supplement and amend its application; and (iii) to review and rule upon the merits of Vogue's application in a timely manner consistent with the relief awarded by the Court and consistent with the mandates of the Telecom Act and applicable Tennessee law.

WHEREFORE, Vogue respectfully requests that the Court grant the following relief:

1.     That this action be resolved on an expedited basis pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

2.     That the Town compile and submit a copy of all applications, submissions, reports, evidence, statements, transcripts, minutes, communications, and other documents and materials comprising the entire administrative record relating to Vogue's application, so that this Court and Vogue may conduct an effective review of the Town's denial of the application;

3.     That the Court issue a declaratory judgment that the Town wrongfully denied Vogue's application in violation of the Telecom Act because the Town:

a.   Misinterpreted the plain meaning of its Ordinance, or alternatively failed to construe any ambiguity or conflict in Vogue's favor;

b.   violated Section 332(c)(7)(B)(iii) by failing to issue a contemporaneous and sufficiently clear writing setting forth the reasons for its denial;

c.  violated Section 332(c)(7)(B)(iii) because the denial was not supported by substantial evidence contained in a written record; and

d.  violated Section 332(c)(7)(B)(i)(II) because the Town's misinterpretation of its Ordinance and other conduct effectively prohibit the provision of personal wireless services.

4.  That the Court enter a judgment that the Town's denial violated Section 332(c)(7) and is thus null and void;

5.  That the Court issue a declaratory judgment that the Town wrongfully denied Vogue's application in violation of applicable Tennessee law because that denial:

a.  violated Tenn. Code Ann. § 13-24-301, *et seq.*;

b.  was arbitrary, capricious, and illegal; and

c.  was not supported by material or substantial evidence.

6.  That the Court enter a judgment that the Town's denial violated applicable Tennessee law and is thus null and void;

7.  That the Court issue a permanent injunction and enter an order requiring the Town to:  (a) set aside its misinterpretation of the Ordinance; (b) adopt the correct interpretation of the Ordinance; (c) reinstate Vogue's application; (d) grant Vogue a reasonable opportunity to supplement and amend its application; and (e) order the Town to review and rule upon Vogue's application within a reasonable time consistent with any relief granted in this action and according to all other applicable law;

8.  That the Court grant Vogue its reasonable attorneys' fees pursuant to Tenn. Code Ann. § 29-37-101, *et seq.* and other applicable law;

9.  That the Court tax all costs against the Town; and

4834-1566-3578_2

21

10.     That the Court grant Vogue such other further relief as is just and proper.


Respectfully submitted this 4th day of February, 2021.


CHAMBLISS, BAHNER & STOPHEL, P.C.


By: */s/ Bradley M. Davis*
        Harold L. North, Jr., BPR No. 007022
        Bradley M. Davis, BPR No. 023988
Liberty Tower, Suite 1700
605 Chestnut Street
Chattanooga, Tennessee 37450
Telephone: (423) 756-3000
Facsimile: (423) 508-1291
hnorth@chamblisslaw.com
bdavis@chamblisslaw.com

*Counsel for Plaintiff Vogue Tower Partners VII, LLC*